Filed 5/7/21  Yousif v. Alpine Orthopedic Medical Group CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALEENA YOUSIF, <br><br> Plaintiff, <br><br> v. <br><br> ALPINE ORTHOPEDIC MEDICAL GROUP, INC. et al., <br><br> Defendants and Respondents; <br><br> R. MICHAEL WILLIAMS, <br><br> Objector and Appellant. | F078734 <br><br> (Super. Ct. No. 9000680) <br><br><br> **OPINION** |

APPEAL from orders of the Superior Court of Stanislaus County.  Marie Sovey Silveira, Judge.

Wendel Rosen, Quinlan S. Tom and Thiele R. Dunaway for Objector and Appellant.

Riggio Mordaunt & Kelly, Michael R. Mordaunt and Stephanie Roundy for Defendant and Respondent Alpine Orthopedic Medical Group, Inc.

Cassel Ginns, Scott Ginns and Carlos M. Ambriz for Defendant and Respondent Richard Lind.

Low McKinley Baleria & Salenko, Bruce E. Salenko and Paul R. Baleria for Defendant and Respondent Douglas Tait.

-ooOoo-

In this appeal, we review an order imposing sanctions of $1,500 against appellant, R. Michael Williams, M.D., for failing to comply fully with a deposition subpoena for the production of business records. Williams is a nonparty witness in this action. We conclude sanctions should not have been imposed because neither the deposition subpoena nor the motion to compel compliance with it was properly served on Williams. Therefore, we reverse the sanctions order.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a medical malpractice action in which Aleena Yousif (plaintiff) sued defendant Alpine Orthopedic Medical Group, Inc. (Alpine) and a number of other medical providers for allegedly failing to properly diagnose her bone cancer. During discovery, counsel for defendant, Dr. Douglas Tait, issued a deposition subpoena for the production of business records only, directed to "Custodian of Records For: R. MICHAEL WILLIAMS, M.D." The subpoena was accompanied by a copy of a notice to consumer addressed to plaintiff, with a proof of service showing service on her attorney. The deposition officer to whom the subpoenaed records were to be produced was Quest Discovery Services (Quest), and the date of production was March 23, 2018. Quest's records indicated it received Williams's documents on June 8, 2018.

Subsequently, Alpine and defendant, Dr. Roland Winter, made a motion to compel Williams to comply fully with the Tait deposition subpoena. Defendants Tait and Dr. Richard Lind subsequently filed joinders in the Alpine/Winter motion. The motion was supported by a copy of the deposition subpoena and a proof of service showing the subpoena was served on March 6, 2018, on "ANNA B," at Williams's business address. It was also supported by documents indicating that, in July and August 2018, counsel for Alpine and Winter sent letters to Williams, "Attn: Custodian of Records" (some

2.

capitalization omitted), asserting the document production was incomplete, because plaintiff reportedly was receiving weekly treatments from Williams, but the records of those treatments were not included, and there were no billing records among the documents produced. Counsel for Alpine and Winter threatened to obtain a court order directing compliance if additional documents were not produced.

The proof of service of the motion to compel indicated the motion was served on Williams "by serving Ana Barajas Office Manager." (Some capitalization omitted.) The motion was set for hearing on September 19, 2018. On September 11, 2018, Alpine and Winter filed a notice of nonreceipt of opposition to the motion, stating that it was past the deadline for filing opposition, but none had been received. On September 17, 2018, a response to the motion was filed by "Sokea Kiep R.N.," on behalf of Northern California Cancer Center (NCCC). It asserted, among other things, that the deposition subpoena was erroneously served on Williams, an employee, instead of on NCCC; counsel refused to correct the error; counsel also failed to provide documentation that plaintiff had been notified of the subpoena; and counsel refused to pay the cost of producing the records until June 8, 2018, when counsel paid the costs and the records were produced. The response also noted billing was performed by an outside service, so NCCC did not have billing records in its possession. The response requested that the motion to compel be denied.

In its ruling, the trial court noted the motion was unopposed and granted it, ordering Williams to comply fully with the deposition subpoena. It found Williams's failure to comply fully was without legal justification and imposed sanctions against him, payable to counsel for Alpine and Winter, in the amount of $1,500.

Through counsel, Williams filed a motion for reconsideration, asserting NCCC's attempted response to the motion to compel was not considered by the trial court because a first appearance fee was not paid. The motion for reconsideration asserted the motion to compel was not personally served on Williams or on the custodian of records for

3.

NCCC; the subpoenaing party initially failed to pay the cost of production; the records were produced upon payment; and the billing records were held by Peak Billing Services. Williams requested reconsideration of the sanctions order against him. Alpine and Winter opposed the motion. The trial court's order did not expressly grant or deny reconsideration; it merely modified the prior order to make the $1,500 sanctions "payable jointly and severally" by Williams and NCCC. Williams appeals from the September 19, 2018 minute order and the October 17, 2018 formal order granting the motion to compel and imposing monetary sanctions against him, and from the December 14, 2018 minute order denying reconsideration and modifying those orders.

## DISCUSSION

### I.    Appealability

In its respondent's brief, Alpine[1] challenges the appealability of the order granting the motion to compel and imposing monetary sanctions against Williams. Alpine contends the order on the motion to compel is not a final, appealable judgment, nor an appealable final order on a collateral matter.

" 'The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal.' " (*Aixtron, Inc. v. Veeco Instruments, Inc.* (2020) 52 Cal.App.5th 360, 384.) Generally, no judgment or order in a civil action is appealable unless it is among the appealable judgments and orders listed in Code of Civil Procedure section 904.1.[2] (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.) Those include judgments, except interlocutory judgments. (§ 904.1,

---

[1]    Winter was dismissed from the action by plaintiff on January 3, 2019, after entry of the order on the motion to compel, and before Williams filed his notice of appeal. Winter has not filed a brief in this appeal.

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

subd. (a)(1).)[3] By excepting interlocutory judgments, the statute implies that only final judgments are appealable; a judgment is final and appealable "when no further judicial action by the court is essential to the final determination of the rights of the parties to the action." (*UAP-Columbus JV 326132 v. Nesbitt* (1991) 234 Cal.App.3d 1028, 1034–1035.) The theory behind the final judgment rule "is that piecemeal disposition and multiple appeals in a single action are oppressive and costly, and review of intermediate rulings should await the final disposition of the case." (*Kibrej v. Fisher* (1983) 148 Cal.App.3d 1113, 1115.)

" 'Generally speaking, under the one final judgment rule, interlocutory or interim orders are not appealable, but are only "reviewable on appeal" from the final judgment.' " (*Barton v. Ahmanson Developments, Inc.* (1993) 17 Cal.App.4th 1358, 1360 (*Barton*).) " 'A necessary exception to the one final judgment rule is recognized where there is a final determination of some collateral matter distinct and severable from the general subject of the litigation. If, e.g., this determination requires the aggrieved party immediately to pay money or perform some other act, he is entitled to appeal even though litigation of the main issues continues. Such a determination is substantially the same as a final judgment in an independent proceeding.' " (*United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 941, italics omitted.)

In *Brun v. Bailey* (1994) 27 Cal.App.4th 641 (*Brun*), the appellant was a chiropractor who provided treatment to the plaintiff for injuries she allegedly sustained in the accident that was the subject of her litigation. The defendant moved to compel the chiropractor to appear and answer questions at a deposition, which he refused to do unless he was paid an expert witness fee. (*Id*. at p. 645.) The trial court granted the

---

[3] Orders or interlocutory judgments directing a party or an attorney for a party to pay monetary sanctions in an amount exceeding $5,000 are also directly appealable. (§ 904.1, subd. (a)(11), (12).) Here, however, the sanctions imposed did not exceed $5,000, and were not imposed against a party or an attorney for a party, so the sanctions order is not immediately appealable under these provisions.

motion, requiring the chiropractor to be deposed concerning the facts of the case, his observations, his diagnosis, and his treatment of the plaintiff, but not any expert opinions or analysis. (*Id*. at p. 646.) The chiropractor testified at his deposition, then moved for payment of expert witness fees, contending he had been asked opinion questions. (*Id*. at p. 647.) The trial court denied the motion, and the chiropractor appealed. (*Id*. at pp. 647–648.) The court granted the defendant's motion to dismiss the appeal "insofar as it challenged the order compelling attendance" at the deposition. (*Id*. at p. 648.) The order denying payment of expert witness fees, however, was appealable. "The fee issue is a collateral matter distinct and severable from the general subject of the underlying litigation. The decision of the superior court denying the motion for payment of the fee finally determined the rights of the parties to that collateral matter, leaving no further judicial action to be performed. Appellant's pursuit of this appeal from the denial of the motion can have no effect on the course of the underlying litigation." (*Id*. at p. 650.)

The *Brun* court noted the general rule is "that discovery orders are not appealable and do not constitute orders on collateral matters subject to immediate review on appeal." (*Brun*, *supra*, 27 Cal.App.4th at p. 650.) " 'The rationale for this rule is that in the great majority of cases the delay due to interim review is likely to result in harm to the judicial process by reason of protracted delay [citation] and discovery orders may be reviewed on appeal from a final judgment on the merits.' " (*Ibid*.) This rationale did not apply to the order denying expert witness fees, which was made after the deposition was concluded. The order did not compel production of evidence; review of the order would not result in delay of the underlying action. The court held the order denying expert witness fees was appealable as an order on a collateral matter finally adjudicating the rights of the parties to that matter. (*Id*. at p. 651.)

In *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, the plaintiff sued the defendant for personal injuries, and attempted to take the deposition of the defendant's husband, a nonparty. The trial court granted the husband's motion for a protective order

and imposed sanctions against the plaintiff and her attorney and in favor of the husband and his attorney. (*Id*. at p. 746.) The plaintiff and her attorney appealed. (*Ibid*.) The court found the order appealable as a final judgment on a collateral matter, because it finally resolved all issues between the plaintiff and her attorney on the one hand, and the husband and his attorney on the other hand. (*Id*. at p. 747.) Although the litigation between the plaintiff and the defendant would continue, the appeal "challenge[d] only the sanction award, not the underlying discovery ruling. Accordingly, resolving the dispute at this time will not interfere with the orderly administration of the underlying trial or give rise to numerous unnecessary interim appeals." (*Ibid*.)

In *Barton*, the trial court imposed monetary sanctions against the plaintiff and her attorney for discovery abuse. The plaintiff substituted in a new attorney, and the original attorney filed an appeal from the order imposing sanctions against him. (*Barton*, *supra*, 17 Cal.App.4th at p. 1360.) The court noted that ordinarily an order imposing discovery sanctions is not immediately appealable but may be reviewed by extraordinary writ or on appeal from the subsequent final judgment in the case. (*Ibid*.) It stated that the collateral order exception had not been applied to discovery sanctions. (*Ibid*.) The court found another exception applied: "An appeal is permitted 'when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party.' " (*Id*. at p. 1361.)

The attorney's appeal of the sanctions order was permissible because he no longer represented the plaintiff. (*Barton*, *supra*, 17 Cal.App.4th at p. 1361.) The order was final as to him; he had no further interest in the remainder of the action and there were no other issues to be determined as to the him. (*Ibid*.) The policies underlying the rule making discovery orders nonappealable—that further discovery orders might be contemplated, that discovery promotes production of evidence for use at trial so discovery orders are not

collateral, and that appealability would lead to a multiplicity of interim appeals—did not apply. The court opined:

> "This case involves a countervailing policy: 'that it better serves the interests of justice to afford prompt appellate review to a party whose rights or liabilities have been definitively adjudicated than to require him to await the final outcome of trial proceedings which are of no further concern to him.' [Citation.] Appellant is liable for the sanction; respondent might seek to collect it from him or to enforce it.… It is hardly fair to hold appellant in some kind of judicial penalty box while the underlying case proceeds without him. Appellant's particular problem is ripe for determination, and no purpose is served by delaying its resolution." (*Barton*, *supra*, 17 Cal.App.4th at p. 1361.)

No party has pointed us to any case that held the order requiring or denying discovery was itself immediately appealable, even when it involved discovery from a nonparty; we have found none. "It is generally the rule … that discovery orders are not appealable and do not constitute orders on collateral matters subject to immediate review on appeal. [Citation.] … [A] discovery order '... is in the nature of a procedure for the compelling of evidence to prove or disprove the truth of the issues directly involved in the action and an order made relating thereto cannot be properly classified as a final determination of a collateral matter.' [Citation.] 'The rationale for this rule is that in the great majority of cases the delay due to interim review is likely to result in harm to the judicial process by reason of protracted delay [citation] and discovery orders may be reviewed on appeal from a final judgment on the merits.' " (*Brun*, *supra*, 27 Cal.App.4th at p. 650.) "The rationale of the rule applies to preclude the appeal of orders enforcing discovery or the production of evidence." (*Id*. at p. 651.)

Consequently, we conclude we are without jurisdiction to review the order requiring Williams to produce records in response to the subpoena. The order to pay sanctions, however, is a final order against a nonparty who has no further interest in the matter, which we may review in this appeal taken directly from that order. (See *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432–1433 [appeal limited

to review of the portion of the order imposing monetary sanction; unrelated issues, such as those related to the portion of the order compelling compliance with discovery, were not cognizable because they were not appealable].)

## II.    Mootness

Defendants Lind and Tait filed virtually identical respondents' briefs, asserting the appeal should be dismissed as moot, because Williams produced copies of plaintiff's medical records pursuant to a recent subpoena issued by another defendant; they also assert the sanctions were awarded in favor of Winter and Alpine only.  Alpine makes similar assertions regarding mootness in its respondent's brief; it asserts Winter is no longer a party, Williams and NCCC produced plaintiff's medical records in response to another defendant's subpoena, and Alpine's counsel offered to waive recovery of the monetary sanctions if Williams would dismiss his appeal.  We decline to grant defendants' requests for dismissal, as they do not comply with the mandatory requirements for motions on appeal.  (See Cal. Rules of Court, rule 8.54; *Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 565, fn. 4.)  To make a motion, a party must serve and file a written motion; it "must be accompanied by a memorandum and, if it is based on matters outside the record, by declarations or other supporting evidence." (Cal. Rules of Court, rule 8.54(a)(1), (2).)  Defendants did not file separate motions.  The facts they assert in support of dismissal are not contained in the record on appeal.  Defendants have not proffered any declarations or other supporting evidence to prove the events they contend make the appeal moot.  We decline to dismiss the appeal on the basis of unsworn statements regarding facts allegedly occurring during the pendency of the appeal.  (*Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 106; *American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 557.)

9.

### III. Standard of Review

" 'We review the trial court's ruling on a discovery sanction under the deferential abuse of discretion standard.' " (*Doe v. United States Swimming, Inc.*, *supra*, 200 Cal.App.4th at p. 1435.) " 'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law.' " (*Kayne v. The Grande Holdings Limited* (2011) 198 Cal.App.4th 1470, 1474–1475.)

### IV. Requirements for Award of Sanctions

Discovery may be obtained from a nonparty by oral deposition, written deposition, or a deposition for production of business records. (§ 2020.010.) "[T]he process by which a nonparty is required to provide discovery is a deposition subpoena." (*Id.*, subd. (b).) Production of documents by a nonparty deponent requires the service on the deponent of a deposition subpoena. (§ 2025.280, subd. (b).) If the deponent is a natural person, service of a deposition subpoena is made by personal delivery of a copy of it to the deponent. (§ 2020.220, subd. (b)(1).) If the deponent is an organization, service is made by personal delivery of a copy to "any officer, director, custodian of records, or to any agent or employee authorized by the organization to accept service of a subpoena." (*Id.*, subd. (b)(2).) A deposition subpoena only for the production of business records "shall be directed to the custodian of those records or another person qualified to certify the records." (§ 2020.410, subd. (c).) Personal service of a deposition subpoena is effective to require the specified production of documents. (§ 2020.220, subd. (c)(2).)

"If a deponent fails to … produce any document … under the deponent's control that is specified in … a deposition subpoena, the party seeking discovery may move the court for an order compelling that … production." (§ 2025.480, subd. (a).) "This motion shall be made no later than 60 days after the completion of the record of the

10.

deposition ….” (*Id.*, subd. (b).) “If the court determines that the … production sought is subject to discovery, it shall order that … the production be made ….” (*Id.*, subd. (i).)

Failing to respond to an authorized method of discovery is a misuse of the discovery process. (§ 2023.010, subd. (d).) After notice to the affected person and an opportunity for hearing, the trial court may impose monetary sanctions against anyone engaging in a misuse of the discovery process, including payment of the reasonable expenses, including attorney's fees, incurred by anyone as a result. (§ 2023.030.) Additionally, “[t]he court shall impose a monetary sanction … against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel … production, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.” (§ 2025.480, subd. (j).)

A.     **Service of the deposition subpoena**

The motion of Alpine and Winter to compel compliance with the deposition subpoena and for sanctions was directed to nonparty deponent Williams. It was based on the exhibits submitted with the motion, which included the deposition subpoena. The deposition subpoena was addressed to the custodian of records for R. Michael Williams, M.D. Williams, as a natural person deponent, was required to be personally served with the deposition subpoena and could only be sanctioned for disobeying the subpoena if he was personally served with it. (§ 2020.220, subds. (b)(1), (c)(2).) If R. Michael Williams, M.D. was an organization that could be served through its custodian of records or other authorized person, then sanctions could be imposed on the organization only if personal service was effected on the custodian of records or other authorized person. (*Id.*, subds. (b)(2), (c)(2).)

The proof of service, however, indicated the subpoena was personally served on “ANNA B.” The motion to compel did not present any proof of service or other evidence showing personal service on Williams, a natural person. It also did not present any

11.

evidence that "ANNA B" was an officer, director, custodian of records, or agent for service of process of "R. MICHAEL WILLIAMS, M.D."

In *Chapman v. Superior Court* (1968) 261 Cal.App.2d 194, the court annulled a contempt order against Ruth Chapman, which was based on a subpoena for the production of business records in court. (*Id*. at pp. 195–196.) The subpoena was directed to the custodian of records of the plaintiff's treating doctor, Dr. Robert A. Ronne. (*Id*. at p. 195.) Service was governed by section 1987, which required service by delivering a copy of the subpoena to the witness personally. (*Chapman*, at p. 197.) " 'Disobedience of a subpena duly served' " was punishable as a contempt of court. (*Id*. at pp. 197–198.) The court concluded the contempt proceedings were void from the beginning, because the subpoena was not directed to Chapman. (*Id*. at p. 197.) A person who was not " 'duly served' " could not be punished for contempt; the only person who could have been punished for disobedience to the subpoena was the custodian of records of Ronne, and then only if duly served. (*Id*. at p. 198.) Chapman's testimony indicated she was the receptionist in Ronne's front office and was not his custodian of records. (*Ibid*.) The process server had put the subpoena down on her window and left without waiting for Ronne. (*Ibid*.)

Likewise, in *In re Abrams* (1980) 108 Cal.App.3d 685, the court annulled a conviction of contempt arising out of Dr. Edward H. Abrams's alleged disobedience of a subpoena directing him to appear as a witness at trial and bring medical records; the subpoena had been served on his attorney. (*Id*. at pp. 686–688.) Section 1987 required personal service. (*In re Abrams*, at p. 687.) The court rejected the argument the subpoena could be served by substituted service, like a summons. (*Id*. at p. 690.) It concluded the subpoena was not " 'duly served,' " that is, served in the manner required by law, and Abrams could not be punished by contempt for failure to obey it. (*Id*. at p. 695.)

In *Cooley v. Superior Court* (2006) 140 Cal.App.4th 1039 (*Cooley*), the plaintiff served a deposition subpoena on the custodian of records of the Los Angeles County District Attorney's Office (a nonparty), seeking documents that it possessed because of the investigation of a criminal offense. (*Id.* at p. 1042.) The defendant, George Weller (who was also the criminal defendant), had driven his car into a farmer's market, resulting in deaths and injuries. (*Id.* at p. 1041.) The plaintiff was among those injured. The documents sought included investigative reports, statements by Weller, photographs, field interview notes, and results of any tests or examinations, which were items not generated by the district attorney's office. (*Id.* at pp. 1042–1043.) The district attorney's office objected to production. (*Id.* at p. 1043.) The trial court ordered compliance, finding the documents sought were " 'maintained by' " the district attorney's office. (*Ibid.*) The reviewing court issued a writ of mandate commanding the trial court to vacate the order. (*Id.* at p. 1046.)

"A deposition subpoena for business records is to be 'directed to the custodian of those records or another person qualified to certify the records.' " (*Cooley, supra*, 140 Cal.App.4th at p. 1044, citing § 2020.410, subd. (c).) "At first blush, it would seem that a person or entity that maintains records would also be the custodian of those records. Nevertheless, the custodian of records or other qualified witness contemplated by Evidence Code section 1561 must also be able to attest to various attributes of the records relevant to their authenticity and trustworthiness." (*Ibid.*) Evidence Code section 1561 required that the records produced in response to a subpoena "be accompanied by the affidavit of the custodian or other qualified witness," attesting that the affiant was the authorized custodian of the records or other qualified witness, the affiant had authority to certify the records, the records were true copies of the documents described in the subpoena, and the records were prepared by the personnel of the business in the ordinary course of business, at or near the time of the act. (*Cooley*, at p. 1041, fn. 1.) In light of this obligation, "execution of a section 1561 affidavit is more than

13.

simply a clerical task." (*Id*. at p. 1044.) It was undisputed the district attorney's office did not prepare or generate any of the documents described in the subpoena; therefore, it could not have made the required attestation. (*Id*. at p. 1045.) Consequently, the plaintiff's motion to enforce the records subpoena should not have been granted. (*Ibid*.)

As these cases illustrate, a subpoena for production of business records may not be enforced against an individual who was not personally served with the subpoena. It also may not be enforced against one who is not the custodian of records or a person qualified to make the attestation required by Evidence Code section 1561.

When Alpine and Winter filed their motion to compel Williams to comply with the subpoena for his records and for sanctions, they bore the burden of proving they were entitled to an order for sanctions against him. (Evid. Code, § 500 [a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that they are asserting]; *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 24 [under Evid. Code, § 500, the party who seeks a court's action in their favor bears the burden of persuasion thereon].) Alpine and Winter failed to demonstrate a misuse of the discovery process warranting sanctions because they failed to prove that the subpoena was personally served on Williams or the custodian of his records. The motion showed only that the subpoena was served on "ANNA B" at Williams's business address. There was nothing to indicate who "ANNA B" was or what role she played (if any) in Williams's business. There was nothing to demonstrate she could certify the requested records or provide the affidavit required to accompany their production. Consequently, the motion to compel compliance with the deposition subpoena should have been denied for lack of proper service of the subpoena.

Additionally, Williams's subsequent motion for reconsideration presented, as new and different facts not considered by the court in ruling on the motion to compel, the declaration of Ana Barajas, which stated she worked in the front office of NCCC, the deposition subpoena was thrown at her face at the front desk while she was working, and

14.

the custodian of records of NCCC was not served with the subpoena. Barajas's declaration was not disputed.

### B. Service of the motion to compel and for sanctions

The motion to compel compliance with the deposition subpoena and for sanctions also was not properly served. "A written notice and all moving papers supporting a motion … to compel production of a document … from a nonparty deponent must be personally served on the nonparty deponent unless the nonparty deponent agrees" otherwise. (Cal. Rules of Court, rule 3.1346.) The Alpine/Winter notice of motion to compel was directed to Williams, who was identified as a nonparty deponent. The caption on the proof of service of the motion indicated it was a proof of personal service on Williams. The proof of service signed by the process server, however, actually reflected that the motion was served on Williams "by serving Ana Barajas office manager." (Some capitalization omitted.) Thus, the proof of service on its face demonstrated a failure to comply with the requirement of personal service. There was no evidence that Williams agreed to be served by service on Barajas, or that he agreed to something other than personal service.

The motion to compel and for sanctions was also untimely. A motion to compel a deponent to produce documents pursuant to a deposition subpoena must be made within 60 days after the completion of the record of the deposition. (§ 2025.480, subd. (b).) "The record of such a deposition is the documentary record memorializing the nonparty's response to the subpoena." (*Board of Registered Nursing v. Superior Court* (2021) 59 Cal.App.5th 1011, 1032 (*Board of Registered Nursing*).) When the deponent responds by serving objections, the deposition is complete when the objections are served, and the 60-day period begins to run on that date. (*Ibid.*; *Unzipped Apparel, LLC v. Bader* (2007) 156 Cal.App.4th 123, 136.) When the deponent both produces documents and serves objections on the same day, the 60-day period for compelling a further response

15.

commences on that date. (*Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1192.)

"The nonparty discovery statutes establish a one-step process for a nonparty responding to a business records subpoena. Upon receipt of the subpoena, a nonparty must make the production on the date and in the manner specified, unless grounds exist to object or disregard the subpoena. The nonparty's compliance with the subpoena is clear on the date specified for production. It has either produced documents as requested in the subpoena, or not. On that date, the subpoenaing party has all of the information it needs to meet and confer regarding the nonparty's compliance and, if unsatisfied, prepare a motion to compel." (*Board of Registered Nursing*, *supra*, 59 Cal.App.5th at p. 1033.) The meet and confer efforts do not extend the 60-day period. (*Id*. at p. 1034.)

The deposition subpoena set a March 23, 2018 date for production of the requested records. Williams did not produce records on that date. The subpoenaing party had all the knowledge needed at that time to engage in meet and confer efforts to obtain compliance or determine why no response was made. If those efforts were unsuccessful at obtaining compliance, the subpoenaing party could have brought a motion to compel compliance within 60 days after the date production was due, that is, by May 22, 2018.

Even if the 60-day period did not begin to run until the subpoenaing party received some response to the subpoena, the undisputed evidence Alpine and Winter submitted in support of the motion to compel showed that documents were produced to the deposition officer, Quest, on June 8, 2018. Although Alpine asserts in its respondent's brief that production occurred on June 11, 2018, it cites nothing in the record to support that date. Measured from the June 8, 2018 production date, any motion to compel was required to be filed and served no later than August 7, 2018.

A motion to compel is "made … upon the due service and filing of the notice of motion." (§ 1005.5; accord, *Weinstein v. Blumberg* (2018) 25 Cal.App.5th 316, 320.) The motion to compel was not filed until August 10, 2018; it was not served on the other

16.

parties until August 13, 2018. It was purportedly served on Williams on August 13, 2018. Thus, using either the date set in the deposition subpoena for production of documents, or the date documents were produced in response to it, the motion to compel was untimely. The 60-day deadline is mandatory. (*Unzipped Apparel, LLC v. Bader*, *supra*, 156 Cal.App.4th at p. 136.) An untimely motion should be denied. (*Board of Registered Nursing*, *supra*, 59 Cal.App.5th at p. 1032.)

Because the deposition subpoena was not personally served on Williams or the custodian of his records, the Alpine/Winter motion to compel and for sanctions was not personally served on Williams, and the motion was untimely, the request for sanctions made in the motion should have been denied. Granting the motion and imposing sanctions on Williams was not in accordance with the governing rules of law, therefore it constituted an abuse of discretion. (*Kayne v. The Grande Holdings Limited*, *supra*, 198 Cal.App.4th at pp. 1474–1475.)

The modification of the sanctions order entered after Williams moved for reconsideration, which added NCCC as a sanctioned party, was also an abuse of discretion. Alpine and Winter did not even claim they served NCCC with the deposition subpoena or the motion to compel. Since they failed to comply with the law requiring such service as a prerequisite to an award of sanctions for failing to produce records, sanctions could not properly be imposed against NCCC.

Because the failure to properly serve the deposition subpoena and the motion to compel and for sanctions is dispositive of the merits of this appeal, we need not consider the other issues raised by Williams, including the contention that Alpine and Winter lacked standing to enforce a deposition subpoena that was issued by counsel for another defendant.

## DISPOSITION

The September 19, 2018 minute order and the October 17, 2018 formal order imposing monetary sanctions of $1,500 against Williams for failing to comply with the

deposition subpoena for records, and the December 14, 2018 order denying reconsideration and modifying those orders, are reversed. The trial court is directed to enter a new order vacating the award of sanctions against Williams. In the interests of justice, neither party shall recover costs on appeal.

HILL, P.J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.